IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

**COAST 2 COAST CONSTRUCTION, L.L.C.**           **CIVIL ACTION**

v.           **NO. 17-1412**

**FERGUSON ENTERPRISES, INC.**           **SECTION: "I" (1)**

**MEMORANDUM OF LAW IN SUPPORT OF FERGUSON ENTERPRISES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Comes now Defendant and Counter-Plaintiff, Ferguson Enterprises, Inc. ("Ferguson"), by and through undersigned counsel, Balch & Bingham LLP, and files this Memorandum of Law in Support of its Motion for Partial Summary Judgment against Coast 2 Coast Construction, LLC ("Coast 2 Coast"), and would show unto this Honorable Court the following:

**INTRODUCTION**

This is a case about Coast 2 Coast's failure to pay for material that was ordered from Ferguson. The material at issue was ordered, accepted, used and never rejected by the contractor. Moreover, Coast 2 Coast has been paid in full for the material by the owner of this project, St. Tammany Parish (the "Owner" or "Parish"). Despite ordering the material, accepting material, using material, failing to pay in full for the material and being reimbursed for the material, Coast 2 Coast has sued Ferguson for over $200,000. The chief complaint raised by Coast 2 Coast is that Ferguson provided nonconforming goods because a portion of the material was import and not domestic.[1]

---

[1] Coast 2 Coast does not complain that the material was in any way defective, instead its position is that Ferguson obtained the material for a lesser price. The Petition specifically states:

> Although **there is no indication that the building materials provided by defendant were defective or did not meet the plans and specifications of the Project** in which they were installed, they were not of the kind or quality specified in the quote or represented by the defendant, **the costs of said building materials to defendant was much less** than the cost of the building materials actually provided for the project.

176124.4

Admittedly, the original quote provided by Ferguson was for domestic material. Ferguson delivered some import material that was approved separately by Coast 2 Coast and the Owner. Coast 2 Coast readily admits that it was aware that some of the material delivered was import as early as May 2015.[2]  With this knowledge, Coast 2 Coast accepted the material, made partial payments for the material and never once rejected the material.  Additionally, Coast 2 Coast engaged in numerous conversations and correspondence with Ferguson over the next fourteen (14) months regarding payment of the outstanding balance owed to Ferguson, and never once during those conversations did it complain that the delivery of import material was considered nonconforming and that it was seeking a reduction in price.  Thus, over the course of fourteen (14) months with full knowledge that some of the material was import, Coast 2 Coast: (i) never once complained of the import material; (ii) never once rescinded the contract based on import material; (iii) never once rescinded its acceptance of the import material; (iv) never demanded that Ferguson cure the nonconformity; and (v) never sought a reduction in price for the import material at issue.  Based on clear case law from this Honorable Court (affirmed by the Fifth Circuit), such a failure to take any action for fourteen (14) months subjects Coast 2 Coast's claims on the import material to judgment as a matter of law.

If a buyer fails to seasonably notify the seller of defects, then the buyer "is not entitled to rescission, reduction in price, or any other remedy."[3]  This Court has found that a buyer waiting two (2) months after discovering a defect or nonconformity was too long to maintain an action

---

*See* the Petition, ¶ 12 (emphasis added).

[2] While not raised for the purposes of this Motion, the contractor was actually made aware of this issue in February 2015 when Ferguson informed Coast 2 Coast verbally that it would be submitting import materials for approval.

[3] *Domangue Fur House, Inc. v. Disbrok Trading Co., Inc.*, 228 F. 3d 410 (Table Opinion), 2000 WL 1056309, *3 (5th Cir. 2000) ("*Domangue Appeal Opinion*"), *quoting the opinion issued by this Honorable Court on the buyer's Motion for New Trial*, 1999 WL 225435, *4 (E.D. La. 1999).

176124.4                                            2

for reduction in price.[4] In comparison, Coast 2 Coast waited over a year before providing Ferguson notice that the import material was nonconforming and that it was seeking a reduction in price. During the time it waited, Coast 2 Coast made partial payments on the material, used the material on the project and even submitted Ferguson's invoiced amounts for the material directly to the Owner for compensation. Coast 2 Coast's failure to reject the material or timely demand a reduction in price for fourteen (14) months subjects its claim to dismissal as a matter of law.

Aside from its failure to timely reject the material provided, Coast 2 Coast included the cost of this material in its pay applications to the Parish for compensation. The Parish then made payments to Coast 2 Coast <u>without any reduction due to the material being import as opposed to domestic</u>. Stated differently, Coast 2 Coast passed through all of its cost on the import material to the Parish and has been paid in full for such material. Since damages are an essential element to a breach of contract claim, Ferguson is entitled to judgment as a matter of law on this issue alone because Coast 2 Coast cannot prove that it has been damaged. Thus, even if this Court finds that Coast 2 Coast properly notified Ferguson of the alleged nonconforming goods, it has no contractual claim because it has no damages.[5]

## STATEMENT OF MATERIAL UNDISPUTED FACTS

Pursuant to Local Rule 56.1, Ferguson submits this concise statement of undisputed facts. This dispute arises from material supplied by Ferguson to Coast 2 Coast for the Huntwyck Village, Phase II – Drainage Pump Station, Force Main and Canal Clearing and Widening

---

[4] *Domangue Fur House, Inc. v. Disbrok Trading Co., Inc.*, 1999 WL 224535, *3 (E.D. La. 1999) ("*Domangue II*").

[5] By making this argument, Ferguson does not admit that the agreement between it and Coast 2 Coast was breached. However, for the purposes of this Motion, Ferguson's position is that even if the agreement was breached, Coast 2 Coast's claims are still subject to dismissal for either delay in notification or lack of damages, an essential element to any contract claim.

Project (the "Project") owned by St. Tammany Parish.  The following facts are undisputed and entitle Ferguson to judgment as a matter of law in this case:

- Ferguson provided Coast 2 Coast with a competitive quote on September 4, 2013 to supply certain material for the Project (the "Quote").  *See* the Quote, Exhibit "1".

- Coast 2 Coast ultimately selected Ferguson's quote (among several potential quotes) to use on its bid for the Project.  *See* the Affidavit of Brad Johnson, Exhibit "2", ¶ 4.

- Coast 2 Coast was successful on its bid for the Project.  *See* Exh. "2", ¶ 5.

- Ferguson provided a submittal for approval to Coast 2 Coast and the Parish, which included a material list for part of the Project materials from Sigma.  It is this submittal that included the "import" material at issue (the "Import Submittal").[6]  *See* the Import Submittal, Exhibit "3".

- Coast 2 Coast approved the Import Submittal on February 5, 2015.  *See* Exh. "3".

- The Parish approved the Import Submittal on February 9, 2015.  *See* Exh. "3".

- The import material at issue was delivered to Coast 2 Coast shortly after the approval from Coast 2 Coast and the Parish in February 2015.  *See* Exh. "2", ¶ 1; *see also* the Petition, [Dkt. 1], ¶ 6.

- <u>Coast 2 Coast readily admits that it had actual knowledge that the material in the Import Submittal was not domestically manufactured by May 2015</u>.[7]  *See* Coast 2 Coast's Responses to Ferguson's First Set of Interrogatories, Response No. 5, Exhibit "4".

- Coast 2 Coast never rejected the import material and instead used the material on the Project.  *See* Coast 2 Coast Response to Ferguson's First Set of Requests for Admissions, Request Nos. 3 and 13, Exhibit "5".[8]

---

[6] Ferguson provided a separate submittal for this material because it was import.  Prior to issuing the submittal in February 2015, Ferguson's representatives personally informed Coast 2 Coast's representative that the Import Submittal would include import material as opposed to domestic, and both parties decided to proceed with the Import Submittal. To be clear, however, Ferguson does not rely on this fact to support its Motion for Partial Summary Judgment.  *See* Exh. "2", ¶ 7.

[7] Coast 2 Coast actually knew in February before the Import Material was provided, however, Ferguson does not rely on this fact in support of its Motion for Partial Summary Judgment.  *See* Exh. "2", ¶ 7.

[8] Response to Request for Admission No. 3 does state that Coast 2 Coast did reject some materials; however, those were not import material but other material provided to the jobsite.  The crux of the response is that Coast 2 Coast never rejected any of the import material on the grounds that it was import as opposed to domestic.

- Coast 2 Coast engaged in email correspondence with Ferguson in November 2015 <u>admitting that it owed the remaining balance</u> for the material provided to Coast 2 Coast, and <u>never once complained of any of the material delivered being import, despite knowing that it was import since at least May 2015</u>.  *See* Email Correspondence attached as Exhibit "6".

- Coast 2 Coast continued to make payments to Ferguson from May 2015, including payments received on the following dates:  May 6, 2016 in the amount of $426,094.00; July 23, 2015 in the amount of $176,428.12; September 9, 2015 in the amount of $111,756.00; and November 20, 2015 in the amount of $375,794.57.  This left an outstanding balance of $45,000 by November 20, 2015.  *See* Exh. "2", ¶ 12.

- January 2016 Ferguson files a lien on the project for non-payment (the "Lien").  *See* the Lien, Exhibit "7".

- From January 2016 until July 2016, counsel for both parties engage in attempts to obtain payment for the outstanding balance owed to Ferguson, including an attempt to have the Lien released so that the retainage could be used to satisfy the outstanding balance owed to Ferguson.  Again, not one time during these conversations prior to July 20, 2016 was there any complaint whatsoever of material being import.  *See* Correspondence Between Counsel, Exhibit "8".

- Then on July 20, 2016, for the first time, Coast 2 Coast complained that the material provided was import.  *See* July 20, 2016 Correspondence from Ernie Anderson, attached as Exhibit "9".

- Coast 2 Coast's payments from the Parish on this Project have not been reduced at all based on the provision of import material.  Coast 2 Coast has been paid the exact same amount it would have been paid if domestic material had been delivered.  *See* Exh. "5", Response No. 11.

- In fact, a review of the Pay Applications produced by the Parish in response to a public records request show that Ferguson's invoices and prices were submitted by Coast 2 Coast to the Parish for payment.  *See* Pay Applications, Exhibit "10".

- Ferguson attempted to file suit in state court on January 6, 2017; however, that case was not docketed until January 20, 2107.  *See* Letter to Clerk with Petition, Exhibit "11".

- Before Ferguson's lawsuit was docketed, Coast 2 Coast beat Ferguson to the courthouse by filing this action on January 19, 2017, which was ultimately removed to this Honorable Court.  [Dkt. 1]

- After removal, Ferguson filed an Answer and Counterclaim.  [Dkt. 2]

**LEGAL STANDARD**

Summary judgment, where appropriate, is designed "to secure the just, speedy, and inexpensive determination of every action." Fed R. Civ. P. 1, 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (citation and internal quotation omitted). A court may properly grant a motion for summary judgment when, after viewing the facts in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). Stated differently, summary judgment must be entered against a nonmoving party if that party fails to make a showing sufficient to establish the existence of a genuine issue of fact essential to that party's case. *Celotex,* 477 U.S. at 322-23. A dispute over a material fact is genuine only if a reasonable jury could return a verdict for the nonmovant. *Anderson*, 477 U.S. at 248.

**SUMMARY OF ARGUMENT**

It appears that Coast 2 Coast's claim relating to import material is based on a breach of contract theory under which it seeks a reduction in the sales price, pursuant to La. Civ. Code art. 2541. It does not appear that Coast 2 Coast is seeking a claim of rescission of the contract under either redhibition or the code articles relating to the sale of goods. Under Louisiana law, a claim for the reduction of a sales price for nonconforming goods requires the buyer to both inspect the goods within a reasonable time and inform the seller of any defects within a reasonable time. Inspection of goods is not an issue as to the import material in this case because Coast 2 Coast readily admits that by May 2015 it was aware of the alleged nonconformity. *See* Exh. "4". As to the notification requirement, Louisiana courts have held that a buyer's delay of only a few months is too long to assert a claim for nonconforming goods. Based on the undisputed facts in

this case, Coast 2 Coast knew that the material at issue was import in May 2015, yet continued to make payments for the material, never rejected the material, and in fact used the material on the Project without once complaining to Ferguson. It was not until July 20, 2016 – after Ferguson filed the Lien and sent numerous demand notices – when Coast 2 Coast finally complained of this issue. Coast 2 Coast's delay of fourteen (14) months is unreasonable as a matter of law.

Alternatively, Coast 2 Coast has no damages as it relates to import material. As this Honorable Court has established, the measure of contractual damages under Louisiana law is to put the non-breaching party in the position it would have been had the alleged breach not occurred. In this case, the alleged breach is the provision of import material. However, since Coast 2 Coast has admitted that the Parish did not deduct one penny from its pay based on the provision of import material, it is already in the same position that it would have been if Ferguson had delivered domestic material. Because of this, Coast 2 Coast has no damages due to the provision of import material.

## I. COAST 2 COAST HAS WAIVED ANY CLAIM FOR RECEIVING IMPORT MATERIAL FROM FERGUSON.

### A. A BUYER MUST GIVE NOTICE TO A SELLER WITHIN REASONABLE TIME THAT IT CONSIDERS GOODS NONCONFORMING.

Louisiana law, as interpreted and applied by this Honorable Court, is that a buyer's failure to notify a seller of nonconforming goods within a reasonable time after discovery of the alleged defect or nonconformity foreclosures <u>any theory</u> of recovery for the buyer, including one for reduction in price. *See Domangue Fur House, Inc. v. Disbrok Trading Co., Inc.*, 1999 WL 130636 (E.D. La. 1999) ("*Domangue I*"). Following a bench trial before the Honorable Judge Fallon in *Domangue* and the denial of a Motion for New Trial in *Domangue II*, this Court ultimately ruled that <u>a buyer's delay of at least two (2) months following discovery of defects</u>

foreclosed any avenue of recovery, including a reduction of the sales price. *See Domangue II*, * 3-4; *Domangue I*; and *Domangue Appeal Opinion*.[9]

In *Domangue*, the buyer placed a large order for alligator skins from the seller. *Domangue Appeal Opinion*, *1-2. The buyer received the skins in November 1995. *Id*. Later in November 1995 the buyer shipped the skins to a tanner in Italy. *Id*. at *1. In late December 1995 or January 1996, the buyer discovered – after the Italian tanner inspected the skins – that there were issues with the length and quality of the skins received from the seller. *Id.* at *1-2. Despite being made aware of this issue in December 1995/January 1996, the buyer did not inform the seller of the defect until at least March 1996 (and not in writing until June 1996). *Id*. at *2. At trial there was a dispute as to whether the issues with the alligator skins were due to the seller or the buyer after it received shipment, i.e. there was a dispute as to whether the seller delivered defective or nonconforming goods. *Id*. at *2. The Court ultimately determined that the seller did in fact deliver defective or nonconforming goods. *Id*. at *2 ("The [trial] court further found "that [the seller] breached its warranty as a seller by supplying skins whose length as represented to [the buyer] did not yield the expected amount of surface area in belly width."). However, despite the fact that the seller delivered nonconforming goods, this Court ruled in favor of the seller.

Following a bench trial, the Court found in favor of the seller awarding it damages in the remaining amount owed for the alligator skins and dismissing the buyer's counterclaims because, in part, the buyer did not reject the goods, continued to use and sell the goods, and continued making payments on the goods at issue. *Domangue I*, at *1 (citing *Twin City Motor Co. v. Petit*, 177 So. 2d 814, 817 (La. Ct. App. 1937); and *Logan Pottery Co. v. Mosely*, 150 So. 150, 150

---

[9] *Domangue I* is the findings of fact and conclusions of law from the bench trial, *Domangue II* is the Court's ruling on the buyer's Motion for New Trial and the *Domangue Appeal Opinion* is the Fifth Circuit's affirmance of the case.

(La. Ct. App. 1933)). The buyer filed a Motion for New Trial arguing that even if it was not entitled to rescission of the contract for redhibition, due to its failure to timely notify the seller of the alleged defect, then it should be entitled to contractual damages in the form of a reduction in the sales price. *Domangue II*, at \*1. Stated differently, the buyer argued that the duty to seasonably notify the seller was only for claims based on rejection of the material or rescission of the contract. This Honorable Court rejected that argument finding that the duty to "seasonably" inform a seller of defective or nonconforming goods, outlined in the redhibition code articles, also applies to any theory of recovery for defective or nonconforming goods, including a breach of contract claim for reduction of sales price. *Domangue II*, \*2 (citing *Mengel Co. v. Raziano*, 57 So. 2d 48 (La. Ct. App. 1952)); *see also Bunch v. Hirn*, 665 So. 2d 1181, 1182 (La. App. 4 Cir. 11/30/1995) ("The action for reduction of price or *quanti minoris* is subject to the same rules that govern an action in redhibition."). In denying the Motion for New Trial, this Court specifically held:

> The findings that [the buyer] failed to inspect the quality or the overall length of the shipment within a reasonable period, and that [the buyer] further neglected to provide timely notification to [the seller] regarding its complaints, were not against the weight of the evidence. These duties existed regardless of the legal theory under which [the buyer] proceeded at trial. Having failed to discharge either duty, [the buyer] is not entitled to rescission, reduction in price, or any other remedy.

*Domangue II*, at \*4. Simply put, in order to bring a claim for reduction of sales price for defective or nonconforming goods, a buyer must notify the seller of the defect within a reasonable time, and a failure to do so forecloses any such action.

### B. COAST 2 COAST'S FOURTEEN (14) MONTH DELAY IN NOTIFYING FERGUSON OF ALLEGEDLY NONCONFORMING GOODS IS NOT REASONABLE AS A MATTER OF LAW.

As discussed in *Domangue*, a delay of only two (2) months in notifying a seller of defects foreclosures a buyer's right to bring an action for reduction of price. *Domangue Appeal*

*Opinion*, at *3.   This is in line with other cases relating to redhibition claims and shows that a delay of fourteen (14) months with full knowledge of the alleged nonconformity makes Coast 2 Coast's delay unreasonable as a matter of law.

In *C.T. Street, Inc. v. Breland*, 88 So. 2d 56 (La. Ct. App. 1956), it was determined that continued use of a defective truck for four (4) months with knowledge of the defects constituted a waiver of redhibition.  *Id*. at 57.   In particular, the court held that the buyer should have been put on notice the day the vehicle was delivered; however, instead of tendering the vehicle to the seller or at least complaining to the seller of the defect, the buyer continued using the truck, made repairs to the truck and even continued making payments under an installment contract for the truck.  *Id*. at 57.   Only after being sued did the buyer bring a claim for redhibition.  The Court held that:

> When a purchaser uses the thing which he has purchased for a considerable period of time with knowledge of its defects and makes part payments on the purchase price thereof without protest, he cannot, when sued for the balance due, repudiate the contract on the ground of redhibition.

*Id*. at 57 (citing *Moreau v. McGehee*, 44 So.2d 833 (La. Ct. App. 1950); *Murphy v. Ethridge-Atkins Corporation*, 185 So. 487 (La. Ct. App. 1938); *Cleaners Equipment Corporation v. Weil Cleaners, Inc.*, La. App., 178 So. 771; *G. J. Deville Lumber Co., Inc. v. Jaubert*, 19 La. App. 48, 139 So. 502 (La. Ct. App. 1st Cir. 1932) ; *Goode-Cage Drug Co. v. Ives*, 16 La. App. 383, 133 So. 813 (La. Ct. App. 2nd Cir. 1931); *Ft. Wayne Engineering & Mfg. Co. v. Baker Fuel Oil Burner Co.*, 15 La. App. 275, 131 So. 470 (La. Ct. App. Orleans 1930); *Hooper v. Dry Hand Mop Co., Inc.*, 1 La. App. 621 (La. Ct. App. Orleans 1925)).

In *Hooper* – cited in *Breland* – the court held that retention of defective or nonconforming materials for ten (10) months without any tender or offer to return it to the seller constituted a waiver of a claim for defects.  *Hooper*, 1 La. App 621, 622-23.   Again, the buyer

appears to have been silent on the alleged defects until the seller sought payment on the remaining balance. *Id*.

The facts of this case subject Coast 2 Coast's claim for reduction in sales price, due to alleged nonconforming goods, to dismissal as a matter of law. The goods were delivered at some point after the Import Submittal was approved in February 2015 and prior to September 2015. *See* Exh. "2" and the Petition [Dkt. 1], ¶ 6. Coast 2 Coast admits that it had knowledge that the material was import as of May 2015. *See* Exh. "4". Coast 2 Coast used the material on the Project. Coast 2 Coast continued making payments on the material, paying the balance down to $45,000.00. *See* Exh. "2". Coast 2 Coast engaged in correspondence with Ferguson attempting to pay the balance, and never once complained of the import material. *See* Exh. "6". When Coast 2 Coast did not pay the remaining balance timely, Ferguson filed the Lien on the Project under the Louisiana Public Works Act. *See* Exh. "7". Ferguson then sent additional demands and inquires for payment, and not once did Coast 2 Coast complain of import material, including a demand to Coast 2 Coast's surety under its payment bond on the Project. *See* Exh. "8". Finally, fourteen (14) months after Coast 2 Coast admitted that it had knowledge of the import material, it complained in writing to Ferguson. *See* Exh. "9". Then, only after Ferguson sent its correspondence to the state court with a Petition for Damages (with a copy to Coast 2 Coast's counsel) did Coast 2 Coast then file suit. *See* Exh. "11".

Just like this Honorable Court and other Louisiana courts have previously held, a buyer cannot accept allegedly nonconforming goods, continue making payment, fail to notify the buyer for numerous months of the complained nonconformity, and wait until the seller attempts to collect for the material before seeking a reduction in sales price. *See Domangue I*, *Domangue II*,

*Domangue Appeal Opinion*; *Breland*, 55 So. 2d 56, and *Hooper*, 1 La. App 621, 622-23.  As a matter of law, Coast 2 Coast's claim related to import material should be dismissed.

## II. ALTERNATIVELY, COAST 2 COAST DOES NOT HAVE ANY DAMAGES DUE TO FERGUSON'S PROVISION OF IMPORT MATERIAL.

### A. DAMAGE IS AN ESSENTIAL ELEMENT TO A BREACH OF CONTRACT CLAIM.

Coast 2 Coast alleges that the Plaintiff has breached its contractual obligations to it by delivering pipe made in a different location than what the quote provided. However, in order to bring a breach of contract claim in Louisiana, a party must show damages. As such, because Coast 2 Coast has failed to incur any actual damages resulting from the alleged breach of the contract, and because it simply cannot do so, its breach of contract claim based on the country of origin of certain material should be dismissed.[10]

"The essential elements of a breach of contract are threefold." *See Sanga v. Perdomo*, 167 So.3d 818, 822 (La. App. Ct. 5th Cir. 2014); *see also Favrot v. Favrot*, 68 So.3d 1099 (La. App. 4th Cir. 2011). "First, a plaintiff in a breach of contract claim must prove that the obligor undertook an obligation to perform." *Id*. Next, "they must prove that the obligor failed to perform the obligation, resulting in a breach." *Id*. Finally, "**the failure to perform must result in damages to the obligee**." *Id*. (emphasis added).  Speaking on this third element, Louisiana courts have held that "[i]t is <u>elementary</u> that no recovery may be had for breach of contract until damages have been proved." *Achord v. Smith*, 451 So.2d 1315, 1317 (La. App. 1st Cir. 1984) (*citing Foreman v. Jordan*, 131 So.2d 796 (La. App. 3rd Cir. 1961). *See also Denham Homes, L.L.C. v. Teche Federal Bank*, 182 So.3d 108 (La. App. Ct. 1st Cir. 2015) (holding that in determining whether a plaintiff has asserted a cause of action for breach of contract, the plaintiff

---

[10] Coast 2 Coast cannot be damages by accepting nonconforming goods without disagreement.  Its acceptance and acquiescence to the import material prevent it from now claiming it was damaged.

must allege, among other things, that the defendant's failure to perform the contract resulted in damages to the obligee.).

In *Southern Industrial Contractors, LLC v. Western Builders of Amirillo, Inc*., 56 So.3d 307 (La. App. Ct. 2d Cir. 2010), the Louisiana Second Circuit discussed this third element of damages in the summary judgment context. The Court took up the issue of whether a lower court's granting of a defendant's motion for summary judgment was appropriate when the plaintiff failed to allege any actual damages as a result of the defendant's breach of contract. *Id*. at 309. The Court, in upholding the dismissal of the plaintiff's claims, stated that although the plaintiff alleged some financial harm resulting from the breach in the form of the denial of a subsequent bid submission, the affidavits showed that the bid to which plaintiffs used to allege damage was denied for other reasons outside of the breach of the defendants. *Id*. at 312. And, that because of this, there were no genuine issues to a material fact on whether the plaintiff suffered damages, regardless of whether the defendant did breach the contract. *Id*. Thus, the Court held that "[i]n short, the defendants have shown that even if there was a breach, it resulted in no damages to Southern." *Id*. at 312. And, because of this fact, the Summary Judgment was upheld**.**

### B. THE MEASURE OF DAMAGES IS TO PUT THE NON-BREACHING PARTY IN THE SAME POSITION AS IF THERE HAD BEEN NO BREACH.

More importantly, the measure of damages for a breach of contract case is what the non-breaching party would have received had there been no breach. As this Honorable Court has recently stated:

> Louisiana has embraced the contract damages principle of "expectation" damages. Under this principle, the general purpose of contract damages is not to punish breaching parties or enrich non-breaching parties, but rather to produce the same result as would have occurred if there was no breach. **As stated by the Louisiana**

> **Supreme Court, the calculation of damages should place the non-breaching party "in the same position he would have been in" had the contract been fulfilled**. A court must take "great care...to ensure that the plaintiff is not actually placed in a better position than he would have attained had the contract been performed."

*CMP, LLC v. Ry. Spine Prods., LLC*, No. CV 16-6850, 2016 WL 5803141, at *5 (E.D. La. Oct. 5, 2016) (emphasis added) (quoting *In re Bankston*, 749 F.3d 399, 403 (5th Cir. 2014) (internal citations, parentheticals omitted; emphasis in original)); *see also Gibbs Const. Co. v. Thomas*, 500 So. 2d 764, 770 (La. 1987) ("The proper measure of damages in this case is therefore the amount necessary to place Gibbs in the same position he would have been in had Thomas completely fulfilled the suspensive condition and delivered the letter of credit."). Thus, the question is not whether Coast 2 Coast could have made more money, but did Coast 2 Coast make what it expected to make under its agreement with Ferguson. If the answer to that inquiry is yes, then Coast 2 Coast has no damages for which it can recover from Ferguson for the delivery of import material.[11]

Coast 2 Coast readily admits that the Parish did not withhold one penny from its compensation due to Ferguson's delivery of import material. *See* Exh. "4".

> **Interrogatory No. 11:**
>
> Identify any deduction in payments made to you by the Owner of the Project, including the reasons for any such deductions:
>
> **Response to Interrogatory No. 11:**
>
> …
>
> No deduction was made based upon the pipe or fittings on the project other than change order dispute of quantity or tonnage of fittings and retainage.

---

[11] Moreover, Louisiana courts have made it very clear that courts should take "great care to ensure that the plaintiff is not actually placed in a *better* position than he would have attained had the contract been performed." *In re Bankston*, 749 F.3d at 403 (italics in original) (quoting *Barnco Int'l, Inc. v. Arkla, Inc.*, 684 So.2d 986, 999–1000 (La. Ct. App. 1996)).

*See* Exh. "4", Response No. 11. Stated differently, **Coast 2 Coast was paid every penny that it would have been paid even if the material shipped had been domestic**. Since Coast 2 Coast was paid the exact same amount that it would have been paid had the alleged breach not occurred, it has no damages under Louisiana law for which it is entitled to recover. Because of this, Coast 2 Coast's claims for delivery of import material must be dismissed as a matter of law.

## CONCLUSION

Coast 2 Coast's breach of contract claim for reduction in price of the import material must be dismissed for two reasons. First, Coast 2 Coast failed to give any notice whatsoever to Ferguson for fourteen (14) months, despite Coast 2 Coast's clear knowledge that the material was import. During this time, it accepted the material, made partial payments for the material and received payment from the Parish for the material. Aside from its failure to notify Ferguson, Coast 2 Coast has no damages. The measure of damages in a breach of contract case is what the non-breaching party expected to recover under its agreement. Since Coast 2 Coast was paid exactly what it would have been paid if the material had been domestic, it has no compensatory damages under Louisiana law.

For these reasons, Ferguson respectfully requests that this Honorable Court dismiss Coast 2 Coast's claims related to the delivery of import material.

Respectfully submitted this 7th day of June, 2017 by:

/s/ *Matthew W. McDade*
Of Counsel

Matthew W. McDade (LSB No. 32899)
Balch & Bingham LLP
1310 Twenty Fifth Avenue
Gulfport, MS 39501
Telephone: (228) 864-9900
Facsimile: (228) 864-8221
mmcdade@balch.com
*Attorneys for Ferguson Enterprises, Inc.*

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have this day served a true and correct copy of the above and foregoing pleading by the Court's electronic filing system which sent notification to the following counsel of record:

Ernest S. Anderson
ernestanderson@charter.net

This the 7th day of June, 2017.

             /s/ *Matthew W. McDade*
             Of Counsel